IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MC-UA LOCAL 119 HEALTH and WELFARE FUND, *et al.*, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) CIVIL ACTION 11-0241-WS-M<br>) |
| HLH CONSTRUCTORS, INC., | )<br>) |
| Defendant. | ) |

ORDER

This matter comes before the Court on plaintiffs' Motion for Default Judgment (doc. 9), as well as their Supplemental Brief in Support of Motion for Default Judgment (doc. 15). The Motion is ripe for disposition.

**I.     Background.**

This action for payment of employer contributions to certain benefit plans and remittance of union wage deductions was initiated by a host of plaintiffs, including the MC-UA Local 119 Health and Welfare Fund (the "Welfare Fund"), the MC-UA Local 119 Pension Plan (the "Pension Plan"), the Joint Apprenticeship Training Fund (the "JAT Fund"), various trustees of such plans, and the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, Local 119 ("Local 119"). On May 11, 2011, these defendants collectively filed suit against defendant, HLH Constructors, Inc., alleging that HLH was in violation of the plans' documents, the Employee Retirement Income Security Act, and the applicable collective bargaining agreement by failing to make required payments.

The well-pleaded factual allegations in the Complaint included the following: (i) in a collective bargaining agreement whose effective dates were July 23, 2008 through June 22, 2011, HLH agreed to make contributions to the Welfare Fund, the Pension Plan and the JATC Plan, and to remit certain deductions from employee wages to Local 119; (ii) HLH has failed to make timely contributions to the benefit plans since July 2010 (excluding the period of September through December 2010 for the Pension Plan and Welfare Fund), and is delinquent in such

contributions; (iii) HLH has likewise failed to remit authorized working assessment and other deductions (which it withheld from employees' wages) to Local 119 since July 2010, instead converting those funds to its own use; and (iv) such conduct breaches the terms of the collective bargaining agreement and plan documents.  (Doc. 1, ¶¶ 15-21.)  On the strength of these allegations, the Complaint asserts causes of action against HLH for violation of 29 U.S.C. §§ 1145 and 185(a), and requests declaratory and injunctive relief, as well as a money judgment for the delinquency amount, interest and liquidated damages (plus reasonable attorney's fees and costs).

The record shows that plaintiffs timely served process on HLH on or about May 16, 2011.  (*See* doc. 4.)  Notwithstanding service, however, HLH neither appeared nor otherwise undertook to defend against plaintiffs' claims in this action.  On that basis, a Clerk's Entry of Default (doc. 8) was entered against HLH pursuant to Rule 55(a), Fed.R.Civ.P., on August 15, 2011.[1]  Thereafter, plaintiffs filed a Motion for Default Judgment, and (after a court-authorized opportunity to supplement the record) submitted supporting affidavits and exhibits to prove up the monetary award sought.

## II.     Analysis.

### A.     *Entry of Default Judgment is Appropriate.*

In this Circuit, "there is a strong policy of determining cases on their merits and we therefore view defaults with disfavor."  *In re Worldwide Web Systems, Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003); *see also Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. and Canada*, 674 F.2d 1365, 1369 (11th Cir. 1982) ("Since this case involves a default judgment there must be strict compliance with the legal prerequisites establishing the court's power to render the judgment.").  Nonetheless, it is well established that a "district court has the authority to enter default judgment for failure … to comply with its orders or rules of procedure."  *Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985).

---

[1]     The Clerk's Office mailed a copy of the August 15 Clerk's Entry of Default to defendant.  Additionally, Certificates of Service appended to plaintiffs' filings reflect that plaintiffs served copies of both their Motion for Default Judgment and their Supplemental Brief in support of that Motion on HLH via U.S. mail.  Despite unequivocal, repeated notice of these ongoing default proceedings, HLH chose to refrain from taking any action to defend its interests in this case.  Accordingly, the Court concludes that no further notice or invitation to defendant is warranted prior to entry of default judgment.

Where, as here, a defendant has failed to appear or otherwise acknowledge the pendency of a lawsuit for more than five months after being served, entry of default judgment is appropriate. Indeed, Rule 55 itself provides for entry of default and default judgment where a defendant "has failed to plead or otherwise defend." Rule 55(a), Fed.R.Civ.P. In a variety of contexts, courts have entered default judgments against defendants who have failed to appear and defend in a timely manner following proper service of process.[2] In short, "[w]hile modern courts do not favor default judgments, they are certainly appropriate when the adversary process has been halted because of an essentially unresponsive party." *Flynn v. Angelucci Bros. & Sons, Inc.*, 448 F. Supp.2d 193, 195 (D.D.C. 2006) (citation omitted). That is precisely what HLH has done here. Despite being served with process back in May, HLH has declined to appear or defend, and has effectively prevented this litigation from leaving the starting blocks.

The law is clear, however, that HLH's failure to appear and the Clerk's Entry of Default do not automatically entitle plaintiffs to a default judgment in the requested (or any) amount. A default is not "an absolute confession by the defendant of his liability and of the plaintiff's right to recover," but is instead merely "an admission of the facts cited in the Complaint, which by themselves may or may not be sufficient to establish a defendant's liability." *Pitts ex rel. Pitts v. Seneca Sports, Inc.*, 321 F. Supp.2d 1353, 1357 (S.D. Ga. 2004); *see also Nishimatsu Const. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1204 (5th Cir. 1975) (similar); *Descent v. Kolitsidas*, 396 F. Supp.2d 1315, 1316 (M.D. Fla. 2005) ("the defendants' default notwithstanding, the plaintiff is entitled to a default judgment only if the complaint states a claim for relief"). Stated differently, "a default judgment cannot stand on a complaint that fails to state a claim."

---

[2] *See, e.g., In re Knight*, 833 F.2d 1515, 1516 (11th Cir. 1987) ("Where a party offers no good reason for the late filing of its answer, entry of default judgment against that party is appropriate."); *Matter of Dierschke*, 975 F.2d 181, 184 (5th Cir. 1992) ("when the court finds an intentional failure of responsive pleadings there need be no other finding" to justify default judgment); *PNCEF, LLC v. Hendricks Bldg. Supply LLC*, 740 F. Supp.2d 1287, 1290 (S.D. Ala. 2010) ("Where, as here, a defendant has failed to appear or otherwise acknowledge the pendency of a lawsuit for more than three months after being served, entry of default judgment is appropriate."); *Kidd v. Andrews*, 340 F. Supp.2d 333, 338 (W.D.N.Y. 2004) (entering default judgment against defendant who failed to answer or move against complaint for nearly three months); *Viveros v. Nationwide Janitorial Ass'n, Inc.*, 200 F.R.D. 681, 684 (N.D. Ga. 2000) (entering default judgment against counterclaim defendant who had failed to answer or otherwise respond within time provided by Rule 12(a)(2)).

*Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997); *see also Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) ("A default defendant may, on appeal, challenge the sufficiency of the complaint, even if he may not challenge the sufficiency of the proof.").

In light of these principles, the Court has reviewed the Complaint, and is satisfied that it sets forth viable causes of action against HLH under the relevant statutes. Count I asserts a violation of 29 U.S.C. § 1145, which provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." *Id.* The plans are authorized to bring such a cause of action against HLH for failure to fulfill this obligation, pursuant to 29 U.S.C. § 1132.[3] Allegations in the pleading that the plans are multiemployer ERSA plans, that HLH is an employer obligated to pay contributions under the terms of such plans, and that it failed to do so are sufficient to support a cognizable claim for violation of § 1145.

As for Count II of the Complaint, it asserts that HLH breached the collective bargaining agreement with Local 119. In particular, Count II alleges that this agreement required HLH to honor authorized deductions from employee wages and to remit said deductions to Local 119; however, it also alleges that HLH deducted these assessments from the wages of its workers, then failed to remit same to Local 119 beginning in July 2010. This claim is actionable under 29

---

[3] *See, e.g., Bakery and Confectionery Union and Industry Int'l Pension Fund v. Ralph's Grocery Co.*, 118 F.3d 1018, 1021 (4th Cir. 1997) ("In a collection action based on section [1145], a multiemployer plan can enforce, as written, the contribution requirements found in the controlling documents."); *International Painters and Allied Trades Industry Pension Fund v. LaSalle Glass & Mirror Co.*, 267 F.R.D. 430 (D.D.C. 2010) (awarding default judgment to union pension fund and fiduciary against employer on § 1145 claim that employer had failed timely to pay contributions to funds); *Mo-Kan Iron Workers Pension Fund v. Challenger Fence Co.*, 426 F. Supp.2d 1001, 1006 (W.D. Mo. 2006) ("trust funds may directly enforce this obligation by a court action"); *Wisconsin UFCW Unions & Employers Health Plan v. Woodman's Food Market, Inc.*, 348 F. Supp.2d 1005, 1008 (E.D. Wis. 2004) ("A multi-employer plan may enforce as written the contribution requirements found in a collective bargaining agreement.") (citation and internal quotation marks omitted); *Seipel v. MacHill Const. Services, LLC*, 2009 WL 82364 (D. Minn. Jan. 9, 2009) (entering default judgment in favor of trustees and fiduciaries of multiemployer plans against employer on unpaid contributions).

U.S.C. § 185, which authorizes unions to file suits against employers for breach of a collective bargaining agreement.[4]

Because the well-pleaded factual allegations in the Complaint are deemed admitted by HLH's default, and because they are sufficient to state claims under the applicable federal statutes, the Court finds that HLH is liable to plaintiffs under both Counts I and II. As such, then, entry of default judgment against HLH is appropriate pursuant to Rule 55, given HLH's failure to appear after service of process and the sufficiency of the fact allegations of the Complaint (all of which HLH has now admitted) to establish its liability to plaintiffs on the legal theories specified therein, to-wit: that it failed to make required contributions to multiemployer plans and that it breached the collective bargaining agreement by not remitting to Local 119 certain deductions from employee wages. Liability having thus been established, the only remaining question is the damages that should be awarded to plaintiffs in the Default Judgment.

### B. Plaintiffs' Damages.

#### 1. Applicable Legal Standard.

Notwithstanding the propriety of default judgment against HLH, it remains incumbent on plaintiffs to prove their damages. "While well-pleaded facts in the complaint are deemed admitted, plaintiffs' allegations relating to the amount of damages are not admitted by virtue of default; rather, the court must determine both the amount and character of damages." *Virgin Records America, Inc. v. Lacey*, 510 F. Supp.2d 588, 593 n.5 (S.D. Ala. 2007); *see also Eastern Elec. Corp. of New Jersey v. Shoemaker Const. Co.*, 652 F. Supp.2d 599, 605 (E.D. Pa. 2009) ("A party's default does not suggest that the party has admitted the amount of damages that the moving party seeks."). Even in the default judgment context, "[a] court has an obligation to assure that there is a legitimate basis for any damage award it enters." *Anheuser Busch, Inc. v.*

---

[4] *See, e.g., Wooddell v. International Broth. of Elec. Workers, Local 71*, 502 U.S. 93, 98, 112 S.Ct. 494, 116 L.Ed.2d 419 (1991) (recognizing that § 185 allows suits "for violation of a contract between an employer and a labor organization representing employees in an industry affecting commerce"); *Office & Professional Employees Int'l Union, Local 2 v. F.D.I.C.*, 962 F.2d 63 (D.C. Cir. 1992) (under § 185, "when a claim derives from a collective bargaining agreement … the labor organization is *an* appropriate party (although not the *only* appropriate party) to vindicate employees' rights"); *Lynchburg Foundry Co. v. United Steelworkers of America, AFL-CIO*, 409 F. Supp. 773, 775 (W.D. Va. 1976) ("When a union and an employer differ over the existence of the rights of employees established by a collective bargaining agreement, then a cognizable cause of action [under § 185] appears to exist.").

*Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003); *see also Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (explaining that damages may be awarded on default judgment only if the record adequately reflects the basis for award); *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 818 (8th Cir. 2001) (affirming lower court's decision not to award damages on default judgment, where requested damages were "speculative and not proven by a fair preponderance of the evidence"); *Natures Way Marine, LLC v. North America Materials, Inc.*, 2008 WL 1776946, *1 (S.D. Ala. Apr. 16, 2008) (in default judgment setting, district court has obligation "not to award damages that are uncertain or speculative").[5] "Rather than merely *telling* the Court in summary fashion what its damages are, a plaintiff seeking default judgment must *show* the Court what those damages are, how they are calculated, and where they come from." *PNCEF, LLC v. Hendricks Bldg. Supply LLC*, 740 F. Supp.2d 1287, 1294 (S.D. Ala. 2010).

---

[5] In that regard, the Eleventh Circuit has explained that "[f]ederal law similarly requires a judicial determination of damages absent a factual basis in the record," even where the defendant is in default. *Anheuser Busch*, 317 F.3d at 1266. Ordinarily, unless a plaintiff's claim against a defaulting defendant is for a sum certain, the law "requires the district court to hold an evidentiary hearing" to fix the amount of damages. *S.E.C. v. Smyth*, 420 F.3d 1225, 1231 (11th Cir. 2005). However, no hearing is needed "when the district court already has a wealth of evidence from the party requesting the hearing, such that any additional evidence would be truly unnecessary to a fully informed determination of damages." *Id.* at 1232 n.13; *see also Flynn v. Extreme Granite, Inc.*, 671 F. Supp.2d 157, 160 (D.D.C. 2009) (district court is not required to hold hearing to fix damages in default judgment context as long as it ensures there is a basis for damages specified); *Eastern Elec. Corp.*, 652 F. Supp.2d at 605 ("In considering the amount of damages ..., the Court may make its determination by conducting a hearing or by receiving detailed affidavits from the claimant."); *Virgin Records*, 510 F. Supp.2d at 593-94 ("Where the amount of damages sought is a sum certain, or where an adequate record has been made via affidavits and documentary evidence to show ... damages, no evidentiary hearing is required."); *Natures Way Marine, LLC v. North American Materials, Inc.*, 2008 WL 801702, *3 (S.D. Ala. Mar. 24, 2008) ("Although the trial court must make determinations as to the amount and character of damages, it is not necessary to conduct an evidentiary hearing to fix damages if the amounts sought by plaintiff are adequately supported by supporting affidavits and other documentation."). In this case, plaintiffs have not requested a hearing, but have instead submitted detailed evidence in support of their requested damages amount. Under these circumstances, the damages determination will stand or fall on plaintiffs' written evidentiary submission, without the necessity of a formal hearing.

### *2.     ERISA Cause of Action.*

The damages award on plaintiffs' § 1145 cause of action is governed by 29 U.S.C. § 1132(g)(2), which provides that when a plan is awarded judgment on an § 1145 claim, "the court shall award the plan – (A) the unpaid contributions, (B) interest on the unpaid contributions, (C) an amount equal to the greater of – (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan …, (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and (E) such other legal or equitable relief as the court deems appropriate." *Id.* Where the plan prevails on an § 1145 claim, "award of these damages is mandatory, so long as: (1) the employer is delinquent at the time of the action; (2) the Court enters judgment against the employer; and (3) the plan provides for the award." *Trustees of Southern California IBEW-NECA Pension Plan v. Jam Fire Protection*, 718 F. Supp.2d 1176, 1185 (C.D. Cal. 2009); *see also Bricklayers and Allied Craftworkers Local 2 v. C.G. Yantch, Inc.*, 316 F. Supp.2d 130, 154 (N.D.N.Y. 2003) ("the five components of an award under Section 1132(g)(2) are mandatory"). All of these conditions are satisfied here. Thus, it is appropriate to examine plaintiffs' evidence on each category of § 1132(g)(2) damages.

With regard to the unpaid contributions, plaintiffs present substantial evidence quantifying certain of those amounts. In particular, plaintiffs show via declaration and supporting exhibits that HLH has failed to pay the following required contributions: (i) the sum of $21,991.40 in contributions due and owing under the Pension Plan for the months of July 2010, August 2010, January 2011, February 2011, April 2011, and June 2011; and (ii) the sum of $18,794.73 in contributions due and owing under the Welfare Fund for the months of July 2010, August 2010, January 2011, February 2011, April 2011, and June 2011. (Clapper Decl. (doc. 15-1), ¶¶ 5, 7 & Exhs. 4, 5.) Accordingly, plaintiffs have properly shown that they are entitled to unpaid contributions in the amount of **$40,786.13** (or $21,991.40 + $18,794.73) on their § 1145 cause of action.[6]

---

[6]     Plaintiffs also request $4,090.75 for unpaid contributions under the JAT Fund. The problem is that, despite two opportunities to do so, plaintiffs have not made no showing of how they reached that figure. At best, plaintiffs offer a cursory statement in a declaration that "[t]he JAT Plan records show delinquencies in the amount of $4,090.75." (Clapper Decl., ¶ 7.) Although plaintiffs purport to append the JAT Plan records to that declaration, they do not explain how the records support that claim. Moreover, upon inspection, those "records" consist of a largely-inscrutable two page document, whose heading and partial content were lopped off (Continued)

The next category of mandatory § 1132(g)(2) damages is interest on the unpaid contributions. The statute provides that "interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26." 29 U.S.C. § 1132(g)(2). Both the Welfare Fund and the Pension Plan documents provide that interest on delinquent calculations will accrue at a rate of 12% per annum; therefore, that rate applies.[7] Plaintiffs' own calculations and documents confirm that these interest amounts are properly calculated at $1,032.35 for delinquent Welfare Fund contributions, and $947.52 for delinquent Pension Plan contributions, yielding a total interest award of **$1,979.87**.

The third type of damages available under § 1132(g)(2) is "liquidated damages provided for under the plan in an amount not in excess of 20 percent" of the amount of unpaid contributions. 29 U.S.C. § 1132(g)(2)(C)(ii). Both the Welfare Fund and Pension Plan documents assess liquidated damages in the amount of 20% of the delinquent contributions, to compensate the plans for the additional burdens and expense incurred in collecting such contributions and administering the trusts. (Clapper Decl., Exh. 1, at § 6.08(2); *Id.*, Exh. 2, at

---

in the copying / scanning process, with a maze of numbers and abbreviations, none of which plaintiffs have defined or explained. (Clapper Decl., at Exh. 6.) Plaintiffs are silent as to what the many columns of numbers mean, which (if any) relate to the JAT Plan, where those numbers come from, who prepared them, who maintains them, or what period of time they are counting for damages. More fundamentally, these do not appear to be "JAT Plan records" at all, but rather to be a Local 119-generated spreadsheet tracking a variety of contributions and deductions, most of which seem to have nothing do with the JAT Plan. The upshot is that, despite considerable effort to replicate plaintiffs' calculations, the Court cannot discern how plaintiffs computed the delinquent contributions for the JAT Plan. Because it is incumbent on plaintiffs to prove their damages by a preponderance of the evidence, and because they have offered an inadequate showing as to the JAT Plan contributions despite multiple opportunities to prove up damages, the Court will disallow an award for unpaid contributions to the JAT Plan. *See generally PNCEF*, 740 F. Supp.2d at 1294 ("Rather than merely *telling* the Court in summary fashion what its damages are, a plaintiff seeking default judgment must *show* the Court what those damages are, how they are calculated, and where they come from, by reference to … appropriate back-up documentation, and witness testimony as appropriate.").

[7] Specifically, the Welfare Fund trust document provides that interest will accrue on delinquent amounts "at the rate of twelve percent (12%) per annum from the date such payment was due." (Clapper Decl., Exh. 1, at § 6.08(1).) And the Pension Plan trust document likewise states that interest will accrue on delinquent contributions "at the rate of twelve percent (12%) per annum from the date such payment was due." (*Id.*, Exh. 2, at § 6.08(1).)

§ 6.08(2).)  Accordingly, liquidated damages will be awarded against HLH in the amount of $4,398.28 (or $21,991.4 x 0.2) as to the delinquent contributions under the Pension Plan, and in the amount of $3,758.94 (or $18,794.73 x 0.2) as to the delinquent contributions under the Welfare Fund, for a total liquidated damages figure of **$8,157.22**.

The fourth type of damages due under § 1132(g)(2) consists of reasonable attorney's fees and costs of the action.  *See, e.g., McDonald v. Centra, Inc.*, 946 F.2d 1059, 1065 (4th Cir. 1991) ("when a fund is successful in a suit to recover delinquent contributions attorneys fees are mandatory not discretionary"); *Building Service Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401-02 (6th Cir. 1995) (utilizing traditional "lodestar" approach in computing reasonable attorney's fees in § 1145 action, and placing burden on plaintiff of presenting evidence showing hours worked and rates claimed).  The undersigned has reviewed plaintiffs' invoices documenting their accrued attorneys' fees in this matter, and finds both the hourly routes and hours billed to be reasonable under the circumstances.  The Court further finds that plaintiffs reasonably incurred the attorneys' fees and costs in litigating and attempting to resolve this action.  Accordingly, the default judgment award will include an award of **$9,246.25** in attorney's fees and **$371.93** in costs (consisting of the court filing fee and the cost of delivering lawsuit documents to HLH in Baldwin County).

The fifth and final category of damages under § 1132(g)(2) is "such other legal or equitable relief as the court deems appropriate."  29 U.S.C. § 1132(g)(2)(E).  Plaintiffs' Motion for Default Judgment does not request any such other relief, and none will be awarded under this "catch-all" residual provision.

In light of the foregoing, the Court finds that plaintiffs have proven damages on their § 1145 cause of action equal to the sum of all bold-type figures set forth in this subsection, for a total of **$60,541.40.**

### 3. *Breach of Collective Bargaining Agreement Cause of Action.*

With respect to Count II, the claim for breach of collective bargaining agreement, Local 119 may be awarded compensatory damages for HLH's breach, which in this case would consist of the deductions that HLH failed to remit to the union.  *See generally Contempo Design, Inc. v. Chicago and N.E. Ill. Dist. Council of Carpenters*, 226 F.3d 535, 554 (7th Cir. 2000) ("Under § 301, the measure of damages recoverable for a breach of contract is the actual loss sustained as the direct result of the breach."); *Local 78, Asbestos, Lead & Hazardous Waste Laborers, AFL-*

*CIO v. Termon Const., Inc.*, 521 F. Supp.2d 316, 318 (S.D.N.Y. 2007) (awarding compensatory damages for benefit contributions that employer was obliged to make to union funds on behalf of employees). Thus, to the extent that Local 119 proves such damages, it is entitled to an award in the amount of the wage deductions that HLH was contractually obligated to pay to the union, but which it failed to remit.

The problem is that plaintiffs have not made an adequate showing of their damages on this cause of action. Their evidence consists of a union official's bare statement that "Local 119's records show $10,719.62 is owed to Local 119." (Morrison Decl. (doc. 15-2), ¶ 2.)[8] The "records" in question consist solely of the same two-page spreadsheet described in footnote 6, *supra*, which plaintiffs previously classified as "JAT Plan records." (*Id.* at Exh. 3.) The initial, obvious question is whether this exhibit is a "JAT Plan record" or a "Local 119 record." The Court has no idea from this conflicting, skeletal information who created this record, who maintains it, when it was created, or how it was compiled. Moreover, as already chronicled in the aforementioned footnote, this exhibit is wanting on numerous levels. It was poorly scanned so that parts of its contents (including its heading and various lines of data) are omitted. Plaintiffs have not attempted to explain the many columns of numbers, the abbreviations in the column headings, or the source and meaning of the data. On this minimal showing (which constitutes plaintiffs' second attempt to prove their damages), the Court would be compelled to guess, to speculate, and to assume in order to derive damages figures from this exhibit. What's more, even engaging in a combination of guesswork and conjecture (which are not permissible in damages awards), the undersigned has been unable to replicate the amount listed in the Morrison Declaration using various combinations of columns and a calculator. The inescapable conclusion from the foregoing is that plaintiffs have not adequately met their burden of proving damages on Count II, such that no damage award is appropriate on this cause of action. *See, e.g., Fanning v. Permanent Solution Industries, Inc.*, 257 F.R.D. 4, 7 (D.D.C. 2009) ("when moving for a default judgment, the plaintiff must prove its entitlement to the amount of monetary damages requested").

---

[8] Morrison's Declaration does not indicate that he has any personal knowledge as to the amounts owed by HLH to Local 119 in wage deductions that have not been remitted; rather, it is clear from his Declaration that he is merely reciting what is in the "records."

**III.    Conclusion.**

For all of the foregoing reasons, plaintiffs' Motion for Default Judgment (doc. 9) is **granted in part**, and **denied in part**. Default judgment will be entered in favor of plaintiffs and against defendant in the total amount of **$60,541.40**. A separate default judgment will enter.

Because this Order and the accompanying Default Judgment resolve all issues against all parties herein, the Clerk's Office is **directed** to close this file for administrative and statistical purposes.

DONE and ORDERED this 9th day of November, 2011.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE
